IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA
CENTRAL DIVISION

| | |
|---|---|
| PARDEEP SAINI,<br><br>    Petitioner,<br>v.<br><br>KEVIN SCHNEIDER, in his official capacity as Polk County Sheriff; PETER BERG, in his official capacity as St. Paul Field Office Director; TODD LYONS, in his official capacity as Acting Director of United States Immigration and Customs Enforcement; MARKWAYNE MULLIN, in his official capacity as Secretary of the Department of Homeland Security; and TODD BLANCHE, in his official capacity as Acting United States Attorney General,<br><br>    Respondents. | **No. 4:26-cv-00112-RGE-SBJ**<br><br><br>**ORDER**<br>**RE: SHOW CAUSE** |

## I.    INTRODUCTION

Petitioner Pardeep Saini commenced this action against Respondents Kevin Schneider, in his official capacity as Polk County Sheriff; Peter Berg, in his official capacity as St. Paul Field Office Director; Todd Lyons, in his official capacity as Acting Director of United States Immigration and Customs Enforcement; Markwayne Mullin, in his official capacity as Secretary of the Department of Homeland Security; and Todd Blanche, in his official capacity as Acting United States Attorney General, for violation of Saini's due process rights. Pet. Writ Habeas Corpus, ECF No. 1. The Court ordered Respondents not to remove Saini from the Southern District of Iowa during the pendency of Saini's habeas corpus proceedings. Order Show Cause 2–3, ECF No. 5. Federal Respondents removed Saini from the Southern District of Iowa in violation of the Court's Order. Fed. Resp'ts' Resp. Pet'r's Mot. Reconsider & Enforce 3, ECF No. 16.

The Court ordered Federal Respondents and their counsel to show cause why they should not be held in contempt and why sanctions should not be imposed for violating the Court's Order. Order Show Cause, ECF No. 16. The Court also held a hearing. Hr'g Mins., ECF No. 28.

The Court finds Federal Respondents remain in violation of the Court's Order not to remove Saini from the Southern District of Iowa until Federal Respondents return Saini to the Southern District of Iowa. The Court also finds Immigration and Customs Enforcement Officer Quintin Erdman in civil contempt. The Court orders Erdman to conduct a review of the petitioners with active habeas cases in the Southern District of Iowa and file an attestation that all petitioners remain in the District. The Court also admonishes Federal Respondents and Erdman that any further violations of court orders, in this matter or any other in this District, may result in additional findings of contempt and imposition of appropriate sanctions.

## II.    BACKGROUND

### A.    Procedural Background

Saini filed a petition for a writ of habeas corpus, alleging he was arrested and detained by Respondents in violation of his Fifth Amendment due process rights. ECF No. 1 ¶ 8. He moved for an order requiring Respondents to release him from custody or grant relief the Court deemed just and proper. *Id.* at 18. Saini also sought an order preventing Respondents from transferring him out of the district for the duration of his habeas corpus proceedings. *Id.*

On March 19, 2026, the Court ordered Respondents to show cause why Saini was not being unlawfully detained. ECF No. 5. As part of the Order, the Court "enjoin[ed] Respondents from removing Saini outside of the Southern District of Iowa without meaningful notice and an opportunity to be heard." *Id.* at 2–3.

State Respondent Schneider, who had physical custody of Saini, filed a response to Saini's petition for a writ of habeas corpus and took no position on the petition. State Resp't's Reply

Pet'r's Pet. Writ Habeas Corpus 1, ECF No. 7. Federal Respondents—Peter Berg, Todd Lyons, Markwayne Mullin, and Todd Blanche—filed a response acknowledging Saini was entitled to a bond hearing. Fed. Resp'ts' Reply Pet'r's Pet. Writ Habeas Corpus 2, ECF No. 10.

The Court granted in part Saini's petition for a writ of habeas corpus, finding Respondents detained Saini under § 1226(a) and ordering a bond hearing before an Immigration Judge within seven days. Order Granting in Part Pet. Writ Habeas Corpus, ECF No. 12. The required bond hearing occurred three days later, on April 9, 2026. Pet'r's Mot. Reconsider & Enforce 2, ECF No. 13. Saini moved for the Court to reconsider and enforce its Order, arguing the bond hearing failed to comply with the Court's Order and due process requirements. *Id.* In the motion to reconsider, Saini noted he "appeared via WebEx from the McCook facility in McCook, Nebraska" for his bond hearing. *Id.* at 3.

In their response to Saini's motion to reconsider, Federal Respondents stated Saini appeared for his bond hearing from a detention facility in Nebraska. Fed. Resp'ts' Resp. Pet'r's Mot. Reconsider & Enforce 3, ECF No. 16. Federal Respondents acknowledged moving Saini to Nebraska "was contrary to the terms of this Court's Show Cause order issued on March 19, 2026." ECF No. 16 at 3 n.6. However, Federal Respondents appeared to excuse this conduct by stating, "the agency has taken affirmative steps to ensure that habeas petitioners are not moved out of the Southern District of Iowa while their petitions are pending." *Id.* Federal Respondents did not detail whether any action has been taken to move Saini back to the Southern District of Iowa to remedy noncompliance with the Court's Order. *See* ECF No. 5; ECF No. 16. State Respondent Schneider took no position on Saini's motion to reconsider. State Resp't's Resp. Pet'r's Mot. Reconsider & Enforce, ECF No. 15.

The Court directed Respondents to show cause why they were not in violation of the Court's Order enjoining Respondents from removing Saini from the Southern District of Iowa.

Show Cause Order, ECF No. 18. The Court also set a show cause hearing. *Id.*

Federal Respondents filed a memorandum of law in response to the Court's Order to show cause. Fed. Resp'ts' Mem. Law, ECF No. 25. The memorandum of law included a declaration by Immigration and Customs Enforcement (ICE) Supervisory Detention and Deportation Officer Quintin Erdman. Erdman Decl., ECF No. 25-1. Counsel for AUSA Andrew Kahl also provided briefing. Court Ex. 1, ECF No. 29. State Respondent Schneider filed a memorandum of law. State Resp't's Mem. Law, ECF No. 27.[1]

On June 23, 2026, the Court held a show cause hearing. ECF No. 28. Federal Respondents did not produce Saini for the hearing; at the time of the hearing, Saini remained in Nebraska in ongoing violation of the Court's Order. *Id.* Local counsel Ben Arato appeared on behalf of Saini. *Id.*[2] Federal Respondents appeared through AUSA Debra Mendenhall and State Respondent was represented by attorneys Julie Bussanmas and Meghan Gavin. *Id.* AUSA Kahl appeared and remains counsel of record for Federal Respondents. *Id.* AUSA Kahl was also personally represented by attorney William Graham. *Id.* Erdman testified on behalf of Federal Respondents regarding ICE's transfer process generally and Saini's transfer to Nebraska specifically. *Id.*

While a transcript is not available for the hearing, the Court recalls the testimony and relies on the facts presented in the testimony as set forth below. This Order memorializes and augments the Court's rulings made at the show cause hearing.

### B.    Factual Findings

The Court finds the following by clear and convincing evidence. *See Chicago Truck*

---

[1] The Court notes State Respondent Schneider and Polk County took no action to remove Saini from the Southern District of Iowa and have no authority to remove Saini, as Saini is in federal immigration custody.

[2] The Court granted attorney Simranjit Kaur's motion to appear on behalf of Saini remotely. Order Granting Remote Appearance, ECF No. 26. However, Ms. Kaur did not appear for the hearing.

*Drivers v. Bhd. Lab. Leasing*, 207 F.3d 500, 505 (8th Cir. 2000).

The Court enjoined Respondents from removing Saini from the Southern District of Iowa on March 19, 2026. ECF No. 5 at 2–3.

On March 20, 2026, the Unites States Attorney's Office for the Southern District of Iowa sent the ICE Office of the Principal Legal Advisor (OPLA) notice of Saini's petition for a writ of habeas corpus. The United States Attorney's Office attached the Court's Order to show cause, which enjoined Respondents from removing Saini from the Southern District of Iowa.

The same day, an OPLA attorney emailed Erdman and Deportation Officer Daniel Archer to notify them of Saini's habeas case and request an officer be assigned to complete a declaration for the case. OPLA attached Saini's habeas petition and a declaration template to the email, but did not attach the Court's Order to show cause.

Erdman originally assigned Saini's case to Officer Christopher Kasun. Kasun became unavailable, so Saini's case was assigned to Officer Hernandez. At some point, Archer became involved—he completed the declaration attached to Federal Respondents' response to Saini's petition for a writ of habeas corpus. *See* Archer Decl., ECF No. 10-1.

Erdman testified that, at the time of Saini's transfer, there was a general understanding that habeas petitioners would not be transferred out of a district when a habeas petition was pending. However, it was not policy for officers to place holds on detainees with active habeas cases to prevent their removal from the District. Instead, officers noted in a detainee's case file, through flags and case comments, when a detainee had an active habeas matter pending.

Erdman also testified that, at the time of Saini's transfer, it was the responsibility of the officer completing the declaration in a habeas case to note in ICE's case management system that a detainee had an active habeas matter pending. Erdman confirmed that none of the assigned officers—Kasun, Hernandez, Archer, or anyone else—noted Saini's active habeas petition in

Saini's case file. Erdman also confirmed there was nothing preventing him from personally including a habeas notation in Saini's file at any point.

On March 30, 2026, Officer John "Tyson" Scroggins sent Archer and Erdman a list of proposed detainees to be moved from Des Moines to the McCook facility in Nebraska to alleviate capacity issues at the Polk County Jail. Erdman was on leave at the time. Erdman testified that when a potential detainee list is provided, Archer or Erdman will check the ICE case management system before approving detainees to be moved. Erdman testified Archer would have been aware of Saini's pending habeas petition before the Court and Scroggins was not aware of the habeas petition. Archer approved Saini's transfer to Nebraska.

On April 1, 2026, ICE moved Saini, along with fourteen other detainees, to Nebraska.[3] Saini's transfer occurred approximately two weeks after the Court enjoined Respondents from removing Saini from the Southern District of Iowa.

Erdman testified he became aware of ICE's violation of the Court's Order on April 9 or 10, 2026. Erdman did not notify or in any way consult with the United States Attorney's Office when he became aware of the violation. Erdman also did not notify the Court of the violation. Instead, Erdman sought guidance from OPLA on whether to comply with the Court's Order. Erdman testified OPLA advised him to keep Saini in Nebraska and await further instructions. Erdman sought guidance from OPLA a second time prior to the show cause hearing; Erdman testified OPLA again advised Erdman to continue to detain Saini in Nebraska until receiving further instruction.

AUSA Kahl became aware of ICE's noncompliance with the Court's Order when Saini

---

[3] One of the detainees, as discussed below, was Abhishek Kumar. *See* discussion *infra* Section IV.A. Kumar was a habeas petitioner who was also subject to a court order not to be removed from the Southern District of Iowa. *See Kumar v. DHS,* 4:26-cv-00137-SHL-SBJ (S.D. Iowa April 15, 2026).

filed his motion for reconsideration on June 5, 2026, in which Saini states he appeared for his bond hearing from Nebraska. AUSA Kahl contacted OPLA on June 8, 2026, and learned on June 9, 2026, that Saini had been moved to McCook. AUSA Kahl disclosed Saini's removal from the Southern District of Iowa, in violation of the Court's Order, on June 11, 2026. *See* ECF No. 16 at 3. The disclosure was made in a footnote in Federal Respondents' response to Saini's motion to reconsider. *Id.*

The record establishes Erdman knew of the violation of the Court's Order for more than two months prior to the show cause hearing. At no point prior to the show cause hearing did Erdman acknowledge the violation of the Court's Order. At no point prior to the show cause hearing did Erdman disclose the violation to the United States Attorney's Office or the Court.

Astonishingly, at the time of the show cause hearing, Saini remained detained in Nebraska. Saini remained in Nebraska despite Erdman becoming aware of the violation of the Court's Order on April 9 or 10, 2026; AUSA Kahl becoming aware of the violation of the Court's Order on June 9, 2026; and the Court entering an Order to show cause regarding the violation on June 12, 2026. The Court finds Federal Respondents continue to be in violation of the Court's Order not to remove Saini from the Southern District of Iowa.

## III.    LEGAL STANDARD

"Federal courts possess certain 'inherent powers,' not conferred by rule or statute, 'to manage their own affairs so as to achieve the orderly and expeditious disposition of cases.'" *Goodyear Tire & Rubber Co. v. Haeger*, 581 U.S. 101, 107 (2017) (quoting *Link v. Wabash R. Co.,* 370 U.S. 626, 630–631 (1962)). "That authority includes 'the ability to fashion an appropriate sanction for conduct which abuses the judicial process.'" *Id.* (quoting *Chambers v. NASCO, Inc.,* 501 U.S. 32, 44–45 (1991)).

Additionally, "it is firmly established that '[t]he power to punish for contempts is inherent

in all courts.'" *Chambers v. NASCO, Inc.,* 501 U.S. 32, 44 (1991) (quoting *Ex parte Robinson,* 86 U.S. 505, 510 (1873)) (alteration in original). "This power reaches both conduct before the court and that beyond the court's confines, for '[t]he underlying concern that gave rise to the contempt power was not . . . merely the disruption of court proceedings. Rather, it was disobedience to the orders of the Judiciary, regardless of whether such disobedience interfered with the conduct of trial.'" *Id.* (quoting *Young v. United States ex rel. Vuitton et Fils S.A.,* \481 U.S. 787, 798 (1987)) (alterations in original); *see* 18 U.S.C. § 401(3) ("A court of the United States shall have power to punish by fine or imprisonment, or both, at its discretion, such contempt of its authority, and none other, as—[d]isobedience or resistance to its lawful writ, process, order, rule, decree, or command.").

The purpose of civil contempt is remediation. *See Chicago Truck Drivers,* 207 F.3d at 505. ("Civil contempt may be employed either to coerce the defendant into compliance with a court order or to compensate the complainant for losses sustained, or both."). A civil contemnor is afforded the opportunity to reduce or avoid sanctions through compliance. *Int'l Union, United Mine Workers of Am. v. Bagwell,* 512 U.S. 821, 829 (1994).

## IV.   DISCUSSION

The Court begins by observing this is not the first time Federal Respondents have violated a court order to keep immigration detainees in this District during the pendency of their habeas proceedings. Indeed, Federal Respondents have violated court orders regarding immigration detainee transfers in matters before every district judge in this District over the past two months. *See, e.g., Garcia Tevalan v. Williams,* No. 4:26-cv-00233-SMR-HCA (S.D. Iowa June 12, 2026); *Kumar v. DHS,* 4:26-cv-00137-SHL-SBJ (S.D. Iowa April 15, 2026). And these violations are not isolated to this District—courts across the country are struggling with an unprecedented disregard for court orders and continued failure to follow the law. *See, e.g., J.B.C.O. v. Bondi,* No. 26-1429

(JRT/JFD), 2026 WL 638455 (D. Minn. Mar. 6, 2026); *Juan T.R. v. Noem*, No. 26-CV-0107 (PJS/DLM), 2026 WL 555601 (D. Minn. Feb. 26, 2026) (collecting 210 ICE violations of court orders); *Lu v. Joyce*, No. 2:26-CV-00041-SDN, 2026 WL 352447, at *1 (D. Me. Feb. 9, 2026); *Minarcaja Concha v. Lyons*, 818 F. Supp. 3d 495, 496 (E.D.N.Y. 2026).

## A.    Erdman's Conduct

The Court finds Erdman knowingly and willfully violated the Court's Order not to remove Saini from the Southern District of Iowa during the pendency of his habeas proceedings. Although he was not aware of the show cause Order at the time Saini was transferred out of the District, Erdman was aware of Saini's pending habeas action. That oversight notwithstanding, Erdman became aware of ICE's violation of the Court's Order not to remove Saini from the District on April 9 or 10, 2026, approximately one week after Saini had been removed from the Southern District of Iowa. Upon learning of the violation, Erdman did not contact the Court. He did not contact the United States Attorney's Office. Erdman did not make arrangements to have Saini transferred back to the Southern District of Iowa. Instead, Erdman perpetuated Federal Respondents' violation of the Court's Order—he made no effort, at any point, to bring his agency into compliance.

Erdman did contact OPLA for guidance on whether ICE should comply with the Court's Order. According to Erdman, on two separate occasions, OPLA advised Erdman to allow Saini to remain in Nebraska, thereby prolonging noncompliance. OPLA's plainly erroneous advice, however, does not relieve Erman of his duty to follow the law, comply with court orders, and comport with his ethical obligations to the Court, his agency, and immigration detainees.

Compounding the egregiousness of Erdman's actions is the overlap with the *Kumar v. DHS* case in this District. 4:26-cv-00137-SHL-SBJ (S.D. Iowa April 15, 2026). On April 15, 2026, Respondents Markwayne Mullin and Todd Blanche, through AUSA Kahl, notified Judge Locher

9

that a habeas petitioner, Kumar, had been transferred out of the Southern District of Iowa in violation of a court order not to remove him. Fed. Resp'ts' Notice, 4:26-cv-00137, ECF No. 7. One week later, Respondents, through AUSA Kahl, provided additional briefing in response to the court's show cause order. Fed. Resp'ts' Suppl. Filing, 4:26-cv-00137, ECF No. 9. Erdman made a declaration as part of this additional briefing. Erdman Decl., 4:26-cv-00137, ECF No. 9-1.

Erdman affirmed in his declaration in the *Kumar* matter that Kumar was transferred out of the District in violation of the court's order. *Id.* ¶ 4. As part of the declaration, Erdman also detailed the "steps Respondents (DHS/ICE) have taken to ensure similar violations do not occur in the future." *Id.* ¶¶ 4, 15–17. Nowhere in the declaration did Erdman—who had been aware of the violative nature of Saini's transfer for two weeks at this point—notify the court of this related violation of a court order. Neither did Erdman notify AUSA Kahl of this related violation. At the same time Erdman was attesting to ICE's noncompliance in the *Kumar* matter, he chose to remain silent as to the exact same noncompliance in this matter.

Erdman had more than two months to remediate ICE's violation of this Court's Order. Erdman had every opportunity to notify the Court of the violation, notify the United States Attorney's Office, or independently initiate Saini's return to the District. Instead, he did nothing. When the *Kumar* matter indicated to Erdman that judges in this District would seek further explanation regarding ICE's transfer of habeas petitioners outside the District, Erdman continued to do nothing.

"Justice Holmes famously wrote that '[m]en must turn square corners when they deal with the Government.' But it is also true, particularly when so much is at stake, that 'the Government should turn square corners in dealing with the people.'" *Dep't of Homeland Sec. v. Regents of the Univ. of California*, 591 U.S. 1, 24 (2020) (citations omitted) (alteration in original). Federal officials' attention to and compliance with their legal and ethical obligations is paramount. Federal

officials, including ICE officials and Federal Respondents in this matter, are in a position of power over numerous lives. Detainees' rights depend on these officials complying with the law and court orders. And it is a "basic proposition that all orders and judgments of courts must be complied with." *Maness v. Meyers*, 419 U.S. 449, 458 (1975). As this Court has stated previously, and reiterates once again, it is untenable that federal officials refuse to meet their obligation to follow the law and court orders, especially in this context. *See* Order Granting Pet. Writ of Habeas Corpus, *Bankevich v. Bondi*, No. 3:26-cv-00019-RGE-SBJ (S.D. Iowa March 11, 2026), ECF No. 9. It is not the role of the Court to direct federal officials to comply with the law, or remind officials of their duty to satisfy court orders. A court order does not evaporate once a federal official violates it. *Cf. Walker v. City of Birmingham*, 388 U.S. 307, 314 (1967) ("An injunction duly issuing out of a court of general jurisdiction with equity powers, upon pleadings properly invoking its action, and served upon persons made parties therein and within the jurisdiction, must be obeyed by them.").

The Court finds Erdman in civil contempt for knowingly and willfully violating a Court Order. Erdman was aware of the violation of the Court's Order for over two months, yet he did not engage in any action to remedy the violation or notify the Court or the United States Attorney's Office of the noncompliance. As the Court stated at the show cause hearing: this is astonishing conduct and exceedingly unacceptable. The Court admonishes Erdman for his conduct in this matter and further warns that future violations of court orders, in this matter or any other in this District, may result in a further contempt order or imposition of appropriate sanctions.

Erdman represents to the Court, through his testimony and declaration, that ICE has implemented "a plan to try and prevent prohibited transfers." *See* Erdman Decl., ECF No. 25-1 ¶ 19. The Court does not find this representation convincing, as at least one habeas petitioner has been transferred outside of the Southern District of Iowa in violation of a court order after

11

ICE's implementation of Erdman's plan. *See* Fed. Resp'ts' Resp. Pet. Writ of Habeas Corpus ¶ 16, No. 4:26-cv-00233 (June 12, 2026), ECF No. 5. For this reason, the Court orders Erdman to conduct a review of the habeas matters pending in this District and file an attestation with the Court certifying all individuals with active habeas matters remain in the District.[4]

### B.     Future Conduct

Saini's removal from the Southern District of Iowa and continued detention in Nebraska plainly violated the Court's Order. As discussed above, this is a recurring problem. *See, e.g., Garcia Tevalan,* No. 4:26-cv-00233 (S.D. Iowa June 12, 2026); *Kumar,* 4:26-cv-00137 (S.D. Iowa April 15, 2026). Despite Erdman's representation to Judge Locher in April and before the Court in this matter that ICE has implemented a plan to address these ongoing violations, ICE continues to struggle to follow the law and court orders. *See* Erdman Decl., ECF No. 25-1 ¶ 19 (the "plan to try and prevent prohibited transfers" "ha[s] not been completely effective" (referencing habeas petitioner Garcia Tevalan's removal from the Southern District of Iowa on June 10, 2026, in violation of a court order)).

For this reason, the Court reiterates Federal Respondents' duty to the Court and warns Federal Respondents of the consequences of further violations of court orders. "The Constitution does not tolerate willful disobedience of judicial orders—especially by officials of a coordinate branch who have sworn an oath to uphold it." *J.G.G. v. Trump*, 778 F. Supp. 3d 24, 31 (D.D.C. 2025) (vacated on other grounds). "To permit such officials to freely annul the judgments of the courts of the United States would not just destroy the rights acquired under those judgments; it would make a solemn mockery of the constitution itself." *Id.* (quoting *United States v. Peters*, 9 U.S. 115, 136 (1809)) (internal quotation marks omitted). "So fatal a result must be deprecated

---

[4] The Court notes Erdman complied with the Court's Order by filing an attestation on June 24, 2026. Fed. Resp'ts' Notice, ECF No. 30; Erdman Decl., ECF No. 30-1.

by all." *Id.*

Federal Respondents' ongoing noncompliance with court orders is unacceptable; federal Respondents must heed court orders. *See Kumar v. Soto,* No. 26-cv-00777, 2026 WL 457398, at *2 (D.N.J. Feb. 17, 2026) (evaluating respondents' violations of court orders and affirming respondents' responsibility to be in "100% compliance with judicial orders."); *Rigoberto S. J. v. Bondi,* No. 26-CV-957 (LMP/JFD), 2026 WL 490104, at *4 (D. Minn. Feb. 20, 2026) (same). If Federal Respondents learn of a violation of a court order, in a matter before this Court or any other in the Southern District of Iowa, Federal Respondents are required to immediately notify the Court of such a violation. Federal Respondents are also required to remedy the violation with all due haste. It is unacceptable and contrary to law to allow a violation of a court order to continue without notice to the Court and effort to correct the violation.

The Court reminds Federal Respondents' counsel, and any counsel appearing before the Court, of attorneys' ethical obligations to the Court and the Iowa Bar. Officers of the court retain obligations to the court, independent of their duties to their clients, to adhere to the requirements of the law and the Iowa Rules of Professional Conduct. *See* LR 83(f). Counsel has a duty of candor toward the tribunal to disclose adverse facts to the Court. *See* Iowa R. of Prof'l Conduct 32:3.3. Counsel cannot allow a client to separate him from his professional obligations. The Court expects all counsel appearing before the Court to practice ethically. This includes notifying the Court of clients' violations of Court Orders.

Federal Respondents' counsel was obligated to make the Court aware of Federal Respondents' violation of the Court's Order immediately.[5] Advising the Court of Federal

---

[5] For example, an Assistant United States Attorney made the court aware of a habeas petitioner's removal from the Southern District of Iowa, in violation of a court order, the same day the Assistant United States Attorney learned of the removal in the *Garcia Tevalan* matter. *Garcia Tevalan,* No. 4:26-cv-00233-SMR-HCA (S.D. Iowa June 12, 2026). The Assistant United States Attorney

13

Respondents' violation in a footnote in a responsive pleading, two days after counsel became aware of the violation, is insufficient. The Court expects better, particularly from Assistant United States Attorneys who are "the representative not of an ordinary party to a controversy, but of a sovereignty whose obligation to govern impartially is as compelling as its obligation to govern at all; and whose interest, therefore, . . . [is] that justice shall be done." *Berger v. United States*, 295 U.S. 78, 88 (1935).

Further noncompliance by Federal Respondents of court orders may result in an additional order regarding civil contempt or imposition of appropriate sanctions. The Court will not tolerate willful disobedience of judicial orders. *Cf. J.G.G.,* 778 F. Supp. 3d at 31.

## V.    CONCLUSION

The Court finds Federal Respondents remain in ongoing violation of the Court's Order not to remove Saini from the Southern District of Iowa until Saini is returned to the District. The Court also finds Officer Quintin Erdman knowingly and willfully perpetuated ICE's violation of the Court's Order for over two months, with no effort during that time to remediate the violation or provide notice to the Court. The Court finds Erdman in civil contempt for his knowing and willful violation of the Court's Order not to remove Saini from the Southern District of Iowa.

The Court warns Federal Respondents that future violations of court orders, in this matter or any other in this District, may result in a further contempt order or imposition of appropriate sanctions.

For the foregoing reasons,

**IT IS ORDERED** that Federal Respondents Peter Berg, Todd Lyons, Markwayne Mullin, and Todd Blanche shall file a notice with the Court upon Saini's return to the Southern

---

immediately communicated the problem to ICE, and Garcia Tevalan was returned to the Southern District of Iowa the following morning. *Id.*

District of Iowa.[6] Federal Respondents shall endeavor to return Saini to the District with all possible haste.

**IT IS FURTHER ORDERED** that Officer Quintin Erdman shall conduct a review of the petitioners with active habeas cases in the Southern District of Iowa and file an attestation that all petitioners remain in the District by 5:00 PM on June 24, 2026.[7]

**IT IS SO ORDERED**.

Dated this 25th day of June, 2026.

REBECCA GOODGAME EBINGER
UNITED STATES DISTRICT JUDGE

---

[6] On June 24, 2026, Federal Respondents filed a notice with the Court stating Saini is now present in the Southern District of Iowa. Fed Resp'ts' Notice, ECF No. 31.

[7] On June 24, 2026, Federal Respondents filed an attestation by Quintin Erdman in compliance with the Court's Order. Fed. Resp'ts' Notice, ECF No. 30; Erdman Decl., ECF No. 30-1.